Before State Industrial Commission, Respondent.

In the Matter of the Claim of Leo Johnson, Respondent, for Compensation under the Workmen's Compensation Law, v. United States Railroad Administration, Walker D. Hines, Director-General of Railroads, and the Erie Railroad Company, Employer and Self-Insurer, Appellants.

Third Department, November 10, 1920.

**Workmen's Compensation Law — estimation of percentage of loss of use of arm — award affirmed.**

Evidence given in a proceeding under the Workmen's Compensation Law examined, and held, that the Commission was justified in basing the award upon the estimated loss of thirty-third and one-third per cent of the use of the claimant's arm instead of a loss of twenty-five per cent, said percentages being the estimates of medical witnesses.

There is no method by which the percentage of loss of the use of an arm can be accurately determined. It is at best a matter of rough estimate and approximation.

Appeal by the defendants, United States Railroad Administration, Walker D. Hines, Director-General of Railroads, and another, from a decision and award of the State Industrial Commission, made and entered in the office of said Commission on the 7th day of November, 1919.

*Moot, Sprague, Brownell & Marcy [Bertha J. Strootman of counsel], for the appellants.*

*Charles D. Newton, Attorney-General [E. C. Aiken, Deputy Attorney-General, of counsel], for the respondents.*

H. T. Kellogg, J.:

The claimant broke his left arm at the elbow, sustaining " a fracture of the coronoid process of the left ulna, a fracture of the head of the left radius with backward dislocation of the left forearm." Four physicians, named Carr, Downey, Brennan and Mansperger, reported or testified that the claimant had sustained a loss of the use of his left arm to the extent of from twenty to twenty-five per cent. Dr. Grant reported that the loss of use was thirty-three and one-third per cent. He testified as follows: " Q. Is that 33⅓% loss

of the elbow or the arm?   A. In the elbow because I believe that to be the arm.   I think it is loss of use in the arm.   Q. It is your contention that the loss of some use at the elbow is equal to the loss of 33⅓% loss of use of the arm?   A. Yes. Q. With this condition of the elbow he is no better off than if the elbow was completely useless?   A. The elbow is not completely useless; it makes a difference in the loss of use of the arm when the elbow is disabled."   Dr. Grant had figured in his report that the extension loss at the elbow was twenty-five per cent, the flexion loss fifteen per cent, the supination loss five per cent and the pronation loss ninety per cent. This totals approximately a thirty-three and one-third per cent loss of mobility at the elbow.   Dr. Grant also said in his report that this restriction in mobility at the elbow " in my judgment is equivalent to 33⅓% loss of use in the arm."   He was not alone in his use of this method of calculation, for the physicians Carr and Downey jointly reported that the claimant " has good function of joint with 75% motion in all directions," and thereafter testified that his loss of use of the arm was twenty-five per cent, thus treating the fractional loss of use of the arm as being exactly equivalent to the fractional loss of mobility at the elbow.   It is self-evident that a total loss of elbow mobility would not, for all the purposes to which an arm may be put, constitute a total loss of its uses, nor a fifty per cent mobility loss occasion generally a fifty per cent decrease in arm uses.   On the other hand, in so far as perfect flexibility of all three of the joints of the arm might be required it is clear that a percentage loss of elbow mobility would constitute an exactly corresponding loss in the use of the shoulder and wrist joints, and would, therefore, disqualify the entire arm to the same extent.   Moreover, a percentage loss of elbow mobility in many cases might inadequately measure the loss of arm use.   For instance, the mere loss of ten per cent of mobility at the elbow might constitute for many exercises of the arm a total loss of use not only of the elbow but of the arm, since for such purposes the arm would be rendered wholly useless.   There is, of course, no method by which the percentage loss of the use of an arm can accurately be determined.   It is at best a matter of rough estimate and approximation.   It cannot be said, therefore,

that physicians who to a certain extent base their judgment of the loss upon a percentage loss of joint mobility err in so doing. The question is one of fact for the Industrial Commission, to be determined by it upon such proof as physicians may give, in accordance, however, with its own experience, good sense and judgment. We cannot say that the Commission in this case has erred by placing the loss of the use of claimant's arm at thirty-three and one-third per cent rather than at twenty-five per cent, and, therefore, think that the award should stand.

The award should be affirmed.

Award unanimously affirmed.