PUTNAM and MANNING, JJ., concur; BLACKMAR, P. J., and KELLY, J., concur in the result.

Judgment of conviction by the Court of Special Sessions reversed, and, as the facts cannot be changed upon a new trial, the information is dismissed and defendant discharged.

----

Before STATE INDUSTRIAL BOARD, Respondent.

In the Matter of the Claim of JOE TURPIN, Respondent, for Compensation under the Workmen's Compensation Law, v. ST. REGIS PAPER COMPANY, Employer, and THE TRAVELERS INSURANCE COMPANY, Insurance Carrier, Appellants.

Third Department, December 28, 1921.

Workmen's Compensation Law — evidence and presumptions — test for determining extent of partial loss of vision — award affirmed though one test is used in contradistinction to another — evidence supports findings — Appellate Division will not designate particular test — Industrial Board may determine test to be used.

In determining the extent of the loss of vision suffered by a claimant under the Workmen's Compensation Law, the State Industrial Board was justified in using the Snellen test as an element in fixing the loss of vision suffered by the claimant, and the award made, which was based on that

test, will not be disturbed, as the Board had the entire record before it and there was sufficient evidence to uphold its findings.

The Appellate Division will not determine whether the Snellen test or some other test furnishes a proper rule for guidance of the Board in fixing the percentage of loss of vision.

The Board was not bound by the testimony of an expert witness who testified that the formula used by the New York Medical Society is the more accurate. It was 'for the Board to determine, the nature of the tests having been fully explained, which test it should use in determining what partial loss of the use of the eye the claimant had suffered. Moreover, the Board was at liberty to make use of its experience, good sense and judgment in determining what the actual loss suffered was.

COCHRANE, J., dissents.

APPEAL by the defendants, St. Regis Paper Company and another, from an award of the State Industrial Board, entered in the office of said Board on the 25th day of March, 1921.

*Benjamin C. Loder* [*E. C. Sherwood* and *William B. Davis* of counsel], for the appellants.

*Charles D. Newton, Attorney-General* [*E. C. Aiken* of counsel], for the respondent.

VAN KIRK, J.:

The claimant was given an award for sixteen per cent loss of vision, twenty and forty-eight one-hundredths weeks at twenty dollars, plus two weeks at ten dollars. The award is questioned upon one ground only, namely, that the evidence did not show a loss of sixteen per cent of vision.

This presents a plain question of fact for the Board. A similar question arose in *Johnson* v. *United States Railroad Administration* (193 App. Div. 580), where the question was, what loss of use of an arm had been suffered. The court said: " There is of course no method by which the percentage loss of the use of an arm can accurately be determined. It is at best a matter of rough estimate and approximation. * * * The question is one of fact for the Industrial Commission, to be determined by it upon such proof as physicians may give, in accordance, however, with its own experience, good sense and judgment." We think this is the correct rule to be applied here.

In this record is introduced an unusual condition. The

case was tried before Deputy Commissioner Richardson. He stated in open hearing that the Snellen test had always been used by the Commission. "We do-not accept any system but the Snellen." Later, during the examination of Dr. McCaw, he said: "The idea that we have to follow in our cases here is that the Commission desires to follow only the Snellen test table, until such time as some table is adopted." And again: "In order to get this case right, and in order to bring the eye question properly before the proper people, including the Commission and the courts, it seems to me advisable for us to follow instructions of the Commission and award on the acuity of vision as set forth here, which would give this man 16% loss of vision." One gets the impression that, disregarding all other evidence in the case, he had simply decided that the Snellen test was the proper test to determine the percentage loss of vision, without any finding that he considered sixteen per cent, the loss given by the Snellen test, to be the actual loss sustained by this claimant. If this were the actual result in the case it would have to go back to the Industrial Board to make a finding of the percentage loss of vision suffered by the claimant. But the findings were made, not by the deputy commissioner, but by the State Industrial Board, John D. Higgins, chairman; and, at the time of making the finding, they had the entire record before them.

It appears in the testimony of Dr. McCaw that a test or formula, adopted about a year before the hearing by the New York State Medical Society, is a more accurate test than the Snellen test; and, if we were called upon to decide the question upon the evidence in this case, we should have to hold that a wrong test had been used and send the case back to the Board, but we do not think that the court should determine whether the Snellen test or some other test furnishes a proper rule for guidance of the Board in determining percentage of loss of vision. Necessarily some test must be used, but this is only an element of the evidence and the Board must pass upon the evidence and determine what evidence it shall accept and what weight shall be given to its various parts. The Industrial Board had the entire record before it and we think there was sufficient evidence to uphold its finding. It appears

that, in the Snellen test, a chart having on it characters of different sizes is used. If a man standing twenty feet from the chart can see those details on the chart which a man of normal vision can see at forty feet, his vision is characterized as 20–40. The claimant's eyes showed this condition of vision; but with the aid of glasses a correction is enjoyed, so that his vision is represented by the figures 20–30, and it is agreed by all parties that this indicates, or is equivalent to, eighty-four per cent of normal vision, showing a loss of sixteen per cent. Evidence is also presented by the appellants tending to show that this is the measure of the " direct or central vision " only. The direct or central vision is that used directly upon objects in seeing distinctly and clearly size, form, color, etc.; but that there are other elements of vision that must be taken into account to determine the " useful vision," namely, " field vision " and the " binocular vision." The field vision means the wide, general vision used in catching in sight, following and locating objects. The binocular vision is the vision of the two eyes acting together, used in determining depth, width, distance and comparative placing of different objects. In determining useful vision, as the term is used by the appellants' witnesses, an arbitrary formula has been accepted by the occulists. An arbitrary value is given to each of the elements of vision. For normal sight, direct vision, 100; field vision, 100; binocular vision, 50; the total of 250 is used as the denominator. Then the sum of the percentages of each element of normal useful vision, found by an examination of the patient, is used as the numerator. In this case direct vision is found to be 84 per cent; field vision, 100; binocular vision 50, making a total of 234; and the fraction is 234/250, showing a per cent of useful vision, under this standard of measurement, of ninety-three and one-half per cent, showing a loss of six and one-half per cent, which we are asked to hold is the loss suffered by claimant.

While Dr. McCaw testified that the formula used by the New York Medical Society is the more accurate, still the Board was not bound by the evidence of the expert and it was for them to determine, the nature of the test having been fully explained, which test they should use in determining what partial loss of the use of the eye this claimant had

suffered. They were still at liberty to make use of their experience, good sense and judgment in determining what the actual loss suffered in this case was. The Industrial Board may have been of opinion that the direct vision is the vision most essential to the employee engaged in hazardous employments, and that he is handicapped in his work to the extent that his direct vision is damaged, even though his field vision and binocular vision were normal.

The award should, therefore, be affirmed.

JOHN M. KELLOGG, P. J., WOODWARD and H. T. KELLOGG, JJ., concur; COCHRANE, J., dissents on the ground that there is no evidence as to the accuracy of the Snellen test.

Award affirmed.